IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ORANGEBURG DIVISION

| | |
|---|---|
| JESSIE DICKERSON, | ) Civil Action No. 5:05-1181-MBS-JRM |
| Plaintiff, | ) |
| vs. | ) |
| ELECTROLUX HOME PRODUCTS, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Jessie Dickerson ("Dickerson") filed this action on April 20, 2005. He alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] Defendant, Electrolux Home Products ("Electrolux"), filed a motion for summary judgment on January 11, 2006. Dickerson, because he is proceeding pro se, was advised on February 1, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. On January 30, 2006, Dickerson filed a memorandum in opposition to summary judgment. Electrolux filed a reply on February 9, 2006, and Dickerson filed a reply on February 27, 2006.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir.

1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1. Electrolux produces appliances for kitchen, cleaning, and outdoor use. Electrolux has a facility in Orangeburg, South Carolina which produces lawn and garden tractors and garden tillers for retail sale. The facility also provides service parts support for goods manufactured by Electrolux.

2. Dickerson is a fifty-two year old African-American male. He began working at Electrolux as a temporary employee on March 6, 1997. Dickerson was permanently employed as a welder by Electrolux on June 20, 1997. Plaintiff's Dep. 8, 36, and Defendant's Exs. 1 and 2.

3. Dickerson was supervised by various people during his employment at Electrolux. At the time of his termination, the top manager in his department was John Thomas "Tom" Gordon ("Gordon"), a 61 year old Caucasian male. Gordon supervised the employees, or "operators," and directed team leaders. The team leaders were responsible for directing the work flow of the operators, posting the operators' daily assignments, and making sure the operators performed their jobs. Plaintiff's Dep. 43-44; Gordon Aff., Paras. 2 and 3.

4. Rickie Blocker ("Blocker"), a 38 year old African-American male, was Dickerson's team leader during his employment with Electrolux. Team leaders had no authority to hire, fire, or write up an employee. Disciplinary issues were reported to the supervisor. Plaintiff's Dep. 47; Blocker Aff., Paras. 2, 3, and 5.

5. At the time of the alleged incidents, Dickerson's job consisted of rotating various assignments at Electrolux to help build lawnmower "decks." A deck is a portion of a lawn tractor located at the bottom, which houses the blade and supports the seat. A raw deck is approximately 42 inches long and weighs about 20-30 pounds. Gordon Aff., Paras. 11 and 17; Sonya Jenkins Aff., Para. 8; Plaintiff's Dep. 105.

6. Richard Sessions ("Sessions") is a 38 year old Philippine-American male. In February 2004, Sessions was a co-worker of Dickerson. Sessions was also in training to become a team leader. Plaintiff's Dep. 63-64.

7. One day in February 2004, Dickerson went to work at robot number eleven. Dickerson typically operated that robot, although there were no "assigned" robots and Dickerson sometimes worked at different robots. Sessions was at robot eleven that day, and Dickerson asked Sessions what he was doing at "his work station." Sessions stated to

4

Dickerson, "mother f**ker, I am running this robot today to which Dickerson replied "[y]ou called me a mother f**ker, you are the one that is a mother f**ker." Sessions told Dickerson that Blocker assigned Sessions to robot eleven. Dickerson told Blocker what happened and asked that Sessions be kept five feet away from him at all times. In response, Blocker told Dickerson and Sessions that they needed to work together. Blocker also told Dickerson that he talked with witnesses after the incident who stated that Dickerson started the conflict. Dickerson asked Blocker to set up a meeting with Gordon. Plaintiff's Dep. 49, 81-83, 86-88.

8. Dickerson, Sessions, and Gordon met soon after the alleged incident. Sessions apologized to Dickerson and offered to shake Dickerson's hand, but Dickerson refused. After the meeting, Dickerson thought "everything was running all smooth." Plaintiff's Dep. 88-90; Gordon Aff., Paras. 6-9.

9. Dickerson was angry with Blocker and believed that Blocker instigated the situation by assigning Sessions to the machine Dickerson generally ran. Dickerson refused to talk to Blocker for a period of time after the incident. Plaintiff's Dep. 50, 87.

10. In March 2004, Dickerson was suspended for using profanity. Blocker claims that Dickerson stated to him, "mother f**ker, I need decks" and when Blocker objected to Dickerson's choice of words, Dickerson repeated the statement. Dickerson claims that the term "mother-f**ker" was directed at the decks, not at Blocker. Blocker reported Dickerson's statements to Gordon and signed a written statement detailing what happened.

5

      Gordon Aff., Para 12; Blocker Aff., Paras. 11-12; <u>see</u> Plaintiff's Dep. 91, 129-130, and 132-133.[2]

11.    A meeting was held with Dickerson, Gordon, and Betty Pringle ("Pringle"), an African-American female who was Human Resources Director for Electrolux at the time. Gordon claims that Pringle wanted to terminate Dickerson for his conduct, but Gordon convinced Pringle to give Dickerson another chance because Dickerson was a hard worker. Electrolux suspended Dickerson for three days for his use of profanity toward Blocker. Dickerson claims that he was really only suspended for two days and that Gordon told Pringle to suspend him because he [Dickerson] was angry. Gordon Aff., Paras. 13-15; Blocker Aff., Paras. 14-15; Plaintiff's Dep. 130 and Defendant's Ex. 4.

12.    On August 12, 2004, Sessions came into Dickerson's department and slammed into a rack of decks. One of the decks fell down off the rack and almost hit Dickerson. Sessions jumped down from the forklift and called Dickerson an old retard mother-f**ker. Dickerson told John Ross ("Ross"), an African-American male who was the night shift supervisor,[3] about the incident and asked him to talk to Sessions about the incident. Dickerson "feels" that Ross talked to Sessions and Gordon about what happened. Plaintiff's Opp. Memo. at 4.

13.    On August 16, 2004, Sessions again came into Dickerson's department at a high rate of speed on a forklift while Sessions was bending down to pick a deck up off the floor.

---

[2]In his Complaint, Dickerson did not assert any claim about this incident or the corresponding disciplinary action.

[3]Dickerson was not assigned to the night shift.

Dickerson looked at Sessions and the forklift and Sessions started yelling and cursing at Dickerson. Dickerson tossed a deck to hit the forklift. He states that he was not trying to hit Sessions, but only trying to let Sessions know that he was standing there.[4]

14.  Approximately three hours later, Gordon took Dickerson to the front office to see Steve Moize ("Moize"), a Caucasian male who worked in the Human Resources Department; Sonia Jenkins ("Jenkins"), an African-American female who was the Human Resources Director at Electrolux's Orangeburg facility; and Ross. Dickerson told them what

---

[4]This version of the facts is contained in Dickerson's memorandum in opposition to Defendant's motion for summary judgment. Sessions appears to claim that the alleged events only occurred on one day, August 16, 2004. He contends that he was delivering decks in an effort to speed up production, he accidentally hit a rack causing a deck to fall, he apologized to Dickerson, and Dickerson threw a deck at him. Sessions Aff., Paras. 16-27.

Dickerson has provided various versions of the facts in his Charge, Complaint, and deposition. In his Charge, Dickerson wrote:

> I contend that even though I may have thrown a deck, this happened after my team leader, Richard (LNU), tried to hit me with a forklift while he was driving it. This was the second time he has deliberately tried to hit me with it. So I threw the deck in my hand at the forklift without thinking. Then Richard jumped off the forklift yelling at me calling me a 50 year old mo-her fu-king retard and that I am so little I am nothing. He was so close in my face he could have kissed me. I told the night supervisor, John Ross, and he said he would handle it. The same thing happened again on August 16, 2004, and I was fired on August 19, 2004, as a result, and Richard did not suffered [sic] any repercussion.

Plaintiff's Dep., Defendant's Ex. 10. In his Complaint, Dickerson wrote:

> On 8/16/04, I observed Richard Sessions, Team Leader at Electrolux Home Products[,] driving toward me at a fast speed on a forklift. As he approached me on the forklift, Mr. Sessions cursed at me by stating, "I do not want any shit out of you today." After he made that statement, I was reminded of what he did and said to me on 8/12/04 and I became angry and tossed a deck of a lawn mo[w]er toward the forklift he was driving[.] On 8/12/04 Mr. Sessions came toward me at a fast speed on a forklift and caused the deck of a lawn mower to fall towards me. After confronting him on 8/12/04, Mr. Sessions stated "you are 50 years old[], you can hardly talk; you are a 50 year[] old retarded mother f[**]ker and you are nothing."

Complaint, at 3.

7

happened and they asked him to step outside the office. Ross came out and told Dickerson that they were not going to fire him,[5] but he was to go home and Moize would call him the next day (a Tuesday). When Moize did not call him by Thursday, Dickerson called Moize who told Dickerson that Electrolux had decided to terminate him.[6]

15. Sessions was not disciplined for the alleged incident and is currently a team leader in the paint department. See Sessions Aff., Para. 1; Jenkins Aff., Para. 22.[7]

16. In September 2004, Dickerson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission. In his Charge, Dickerson alleged that he was discriminated against on the basis of his race and age because he was suspended for allegedly cursing his team leader, he was harassed by "Richard (LNU)", and he was terminated for throwing a deck. The EEOC issued a right to sue notice on April 12, 2005. Plaintiff's Dep., Defendant's Ex. 10.

## DISCUSSION

Dickerson alleges that: (1) he was terminated due to his race and age; (2) he was harassed by a coworker based on his race and age; and (3) he was retaliated against for complaining about

---

[5] In his deposition, Dickerson admitted Ross did not state that Dickerson was not terminated, but said "they can't fire you today." Plaintiff's Dep. 114.

[6] Jenkins states that she held a meeting with Moize and Ross to discuss Electrolux's options for handing the situation and that Gordon did not participate in the meeting. She states that they reviewed all the evidence and made the final decision to terminate Dickerson because he violated Electrolux's policy on acceptable behavior. Jenkins Aff., Paras. 14-21, 31.

[7] Jenkins states that because Dickerson did not assert that Sessions retaliated against him or tried to fight him, she decided not to discipline Sessions. Jenkins Aff., Para. 22.

8

harassment. Electrolux contends that it should be granted summary judgment because: (1) Dickerson cannot establish a claim for hostile environment racial harassment under Title VII; (2) Dickerson cannot establish a claim for hostile environment age harassment under the ADEA; (3) Dickerson presents no evidence of employment discrimination under Title VII or the ADEA; (4) Dickerson cannot establish a prima facie case of retaliation; (5) Electrolux had a legitimate, non-discriminatory reason for terminating Dickerson; and (6) Dickerson has not shown pretext.

### A.    Harassment/Hostile Work Environment

Dickerson appears to allege that he was subjected to a hostile work environment based on his race and/or age. Electrolux contends that Dickerson fails to establish a claim for hostile environment racial harassment and the Fourth Circuit does not recognize a cause of action for age harassment under the ADEA. Alternatively, Electrolux contends that Dickerson fails to establish an ADEA hostile environment claim.

To prevail on a Title VII hostile environment claim based on race or age, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race or age] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004).[8]

---

[8] The Fourth Circuit has not ruled on whether a claimant can bring a claim for hostile environment based on age pursuant to the ADEA. Recently, in Baqir v. Principi, 434 F.3d 733 (4th Cir. 2006), the Fourth Circuit noted that it "previously assumed, without deciding, that a hostile work environment claim is generally cognizable under the ADEA for plaintiffs age forty
(continued…)

9

In <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment in violation of Title VII, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher</u>, 524 U.S. at 787 (citing <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22(1993)). Among the circumstances examined are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. at 21.

  (1) <u>Based on Race and/or Age</u>

Dickerson fails to show that the alleged harassing comments were based on his race. He admitted that Sessions never mentioned race and that the term "mother f**ker" is not a racial term. Plaintiff's Dep. 84, 86. Dickerson also admitted that Sessions did not mention anything about Dickerson's race in his August 12th comment. <u>Id.</u> at 98. He claims, however that Sessions' August 12th comment and August 16th actions were racially charged because Dickerson is African-American and Sessions only did was he did because Dickerson is African-American.

---

  [8](…continued)
or older." <u>Id</u> at 746, citing <u>Burns v. AAF-McQuay, Inc.</u>, 166 F.3d 292, 294 (4th Cir. 1999) and <u>Causey v. Balog</u>, 162 F.3d 795, 801 n. 2 (4th Cir.1998). For purposes of summary judgment, the undersigned assumes that Dickerson can bring a claim for hostile environment based on age pursuant to the ADEA.

10

Dickerson admitted, however, that he believed Sessions made the comment because he was angry with Dickerson for being the last to finish his work assignment. Dickerson Dep. 93, 96.[9]

The only comment that is allegedly based on age is Sessions' August 12, 2004 comment in which he allegedly called Dickerson old and/or referenced his age. When questioned about this rude comment, Dickerson admitted that it was a criticism of the way he talked and not about his age. Plaintiff's Dep. 100.[10]

    (2)   <u>Severe or Pervasive</u>

Dickerson also fails to establish a hostile work environment claim under Title VII or the ADEA because he has not shown that the alleged harassment was severe or pervasive. At most, Dickerson has alleged that Sessions on one occasion referred to his age in a

---

[9] In his opposition memorandum, Dickerson appears to allege that he was discriminated against by Gordon because Dickerson feels that Gordon is a racist and did not handle the alleged situations as Dickerson would have preferred. Specifically, Dickerson claims that Gordon should have met with Blocker and Dickerson after the March 2004 incident instead of going to personnel and he thought that Ross told Gordon about the August 12th incident and Gordon did nothing about it. See Plaintiff's Opposition Memorandum at 6. This claim, however, was not included in Plaintiff's Charge or Complaint. See <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156-57 (4th Cir. 1995)(court generally does not have subject matter jurisdiction of claims omitted from charge). Further, Dickerson has failed to provide any evidence that Gordon's alleged actions were racially related or motivated.

[10] The relevant testimony follows:
    Q. Is that what he was doing, making fun of you?
    A. No. He wasn't making fun of me. He was criticizing me for being a 50-year-old black man that can't half talk.
    Q. That can't talk?
    A. That can't talk.
    Q. He's criticizing you because most 50-year-old men can talk and he's saying you couldn't talk, is that right?
    A. Yes.
    Q. Was there any other comment he made about your age?
    A. No.
Plaintiff's Dep. 100.

11

derogatory way. The alleged harassing conduct fails to rise to the level of severe or pervasive. See, e.g., Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(actionable sexual harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult."); Robinson v. Montgomery Ward and Co., Inc., 823 F.2d 793, 797 (4th Cir.1987), cert. denied, 484 U.S. 1042 (1988)("occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of racial discrimination."); Burns v. AAF-McQuay, Inc., 166 F.3d at 294-295(comments by employee's supervisor, including asking her intentions about retirement, telling her she did not fit in with the group, and stating that she was 65 years old and was walking around like a ten year old child when she should have been telling the other employees in the office what to do, did not amount to a hostile work environment).

B.     Disparate Treatment

Dickerson alleges that he was terminated based on his race and age. Electrolux contends that Dickerson fails to establish a prima facie case because he was not meeting Electrolux's legitimate expectations and there is no evidence that Electrolux treated other employees outside the protected class differently under similar circumstances.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in

the absence of direct[11] proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

> (1) he is a member of a protected class;
>
> (2) he was qualified for his job and his job performance was satisfactory;
>
> (3) he was subjected to an adverse employment action; and
>
> (4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802.  Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

---

[11] Dickerson has not shown any direct evidence of discrimination or retaliation.  The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor…"  Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), cert. denied, 454 U.S. 860 (1981)).  In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995), abrogated on other grounds, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) (evidentiary standard for mixed-motive jury instruction).

Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff may establish a prima facie case of age discrimination under the ADEA by proving that: (1) he was a member of the protected class (at least forty years old); (2) he was performing his job to the legitimate expectations of his employer; (3) he suffered a materially adverse employment action; and (4) the discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination (e.g., that he was replaced by someone of comparable qualifications under forty years of age or significantly younger). See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996); Dugan v. Albemarle County Sch. Bd., 293 F.3d 716, 721 (4th Cir.2002). If plaintiff establishes a prima facie case of employment discrimination, then defendant has the burden of articulating a legitimate, non-discriminatory reason for failing to promote him. O'Connor, 84 F.3d at 719. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. See Reeves, 530 U.S. at 147.

    (1)    Prima Facie Case

Dickerson fails to establish a prima facie case of discrimination under Title VII or the ADEA because he fails to show that he was meeting Electrolux's legitimate expectations. Electrolux's Policy and Procedure Manual provides that employees may be immediately terminated for gross misconduct, which includes fighting, assaults, and threatening behavior. Plaintiff's Dep., Defendant's Ex. 8; Jenkins Aff., Paras. 21-22.

Additionally, Dickerson has not shown that he was replaced by a person outside the protected class or that his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination under the circumstances. Electrolux provides that it is unaware of any

employee that replaced Dickerson and asserts that other employees merely assumed his job functions. Motion for Summary Judgment at 23. Jenkins states that three other Electrolux employees who engaged in similar violent behavior while working in 2004 were terminated, including a 28 year old African-American male terminated for fighting, a 49 year old Caucasian male terminated for fighting, and a 55 year old African-American male terminated for threatening to fight an individual with a knife. Jenkins Aff., Para. 23.

Dickerson argues that he has met this prong because Sessions was not terminated. Sessions, however, did not throw a rack toward another employee. Even if Dickerson can meet this prong, he has not shown that he was meeting Electrolux's legitimate expectations, as discussed above.[12]

(2)     Legitimate, Non-discriminatory Reason/Pretext

Even if Dickerson could establish his prima facie case, Electrolux has articulated a legitimate, non-discriminatory reason for terminating Dickerson, that he threw a deck at another employee. Dickerson argues pretext because he claims that he was terminated by Moize, a Caucasian, rather than Jenkins, an African-American. In support of his argument, he notes that Moize signed a "Coaching for Improvement Form" with the Coaching Level of

---

[12]If Dickerson is attempting to assert a claim for disparate discipline, he fails to establish a prima facie case because he has not shown that Sessions' alleged misconduct was comparable in seriousness to his own misconduct. A plaintiff may establish a prima facie case of disparate discipline by offering proof that:
> (1) he is a member of a protected class under Title VII;
> (2) the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and
> (3) he suffered more severe discipline for his misconduct as compared to those employees outside the protected class.

See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985).

15

"Termination" checked. The form does not appear to have been presented to Dickerson as it was not signed by him. Further the form states that Dickerson was sent home pending investigation. Attachment to Plaintiff's Opposition Memorandum. Additionally, as noted above, Jenkins states that she made the decision to terminate Dickerson. Even if Moize, instead of Jenkins, terminated Dickerson, Dickerson fails to show that the articulated non-discriminatory reason for his termination (throwing a deck at another employee) is false or that his race or age was the real reason for his termination.[13]

    C.    Retaliation

Dickerson alleges that Electrolux retaliated against him for complaining about harassment. Electrolux contends that Dickerson cannot establish a prima facie case of retaliation because he has not shown a causal connection between Dickerson's alleged complaints and his termination.

To establish a prima facie case of retaliation under Title VII or the ADEA, an employee must demonstrate that:

    1)    the employee engaged in protected activity;[14]

---

[13] Dickerson also appears to argue that Moize sent him home and did not call him in an effort to have Dickerson not report for three days and thus be automatically terminated. He has presented no evidence to support this, as he admitted that Ross told him to turn in his badge (Plaintiff's Dep. 114) which Electrolux provides would no longer subject him to its call-in policy (Defendant's Reply at 12). Further, Dickerson called in prior to the expiration of three days.

[14] Under Title VII, a plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Indus., Inc., 802 F.2d 746 (4th Cir. 1986), cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

  2)  the employer took some adverse employment action against the employee; and

  3)  a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII); and Culver v. Gorman & Co., 416 F.3d 540 (7th Cir. 2005)(Title VII and Equal Pay Act). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

  (1) Prima Facie Case

  Dickerson fails to establish a prima facie case of retaliation because he has not shown a causal connection between the protected activity and his termination. The alleged protected activities are Dickerson's complaint to Blocker and Gordon about Sessions after the February 2004 incident and his complaint to Ross about the August 12, 2004 incident. Dickerson fails to establish a causal connection between the alleged protected activities and his termination because the decisionmaker(s) who terminated him did not know of his protected activities. He admits he never complained to members of the Human Resources Department about Sessions or any harassing or discriminatory conduct prior to his termination. Plaintiff's Dep. 127. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)(plaintiff failed to establish third prong of prima facie case of retaliation claim where decision maker was

unaware that plaintiff had engaged in protected activity); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)("Knowledge of a charge [of discrimination] is essential to a retaliation claim."); Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001)(no causal connection because individual taking action against employee had no knowledge of protected activity).

          (2)      Legitimate, Non-Discriminatory Reason/Pretext

Even if Dickerson could establish a prima facie case of retaliation, Electrolux has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, that he threw a deck at another employee. Dickerson fails to show that this reason is pretextual.

## CONCLUSION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 15) be granted.

                                Respectfully submitted,

                                s/Joseph R. McCrorey
                                United States Magistrate Judge

May 5, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
